EMILY HIGHTOWER v. THE STATE.

No. 723.   *Decided October 19, 1910.*

**Local Option—Credibility of Witness—Moral Turpitude.**

Accusations of crime and convictions which do not involve moral obliquity
and are not of the grade of felony can not be used to show moral turpitude; and
upon trial of a violation of the local option law it was reversible error to permit
State's counsel on cross-examination of the defendant to question or compel her to
answer how many times she had been indicted for selling intoxicating liquors
during the year of 1909, and whether it was not a fact that she had been indicted
nine times before this for violating the local option law. Especially where
the court applied this testimony to defendant's credibility. Following Merri-
wether v. State, 55 Texas Crim. Rep., 438.

Appeal from the County Court of Nacogdoches.   Tried below be-
fore the Hon. F. P. Marshall.

Appeal from a conviction of a violation of the local option law;
penalty, a fine of $100 and sixty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This appeal is prosecuted from a conviction
had in the County Court of Nacogdoches County on May 4 of this
year wherein appellant was found guilty of a violation of the local
option law in said county and her punishment assessed at a fine of
$100 and imprisonment in the county jail for sixty days.

The prosecuting witness, one Ed. Tucker, testified, in substance,
that on the night of April 1, 1910, he was at appellant's house and
purchased from her a quart of whisky, for which he paid her $1.50.
Appellant by the testimony of several witnesses establishes an alibi.
She took the stand in her own behalf and denied the sale. The
general reputation of Tucker for truth and veracity was shown to
have been bad. It is also shown by the testimony of one King that

Ed Tucker in relating the circumstances to him stated that he had stopped at the house in question, and that a negro woman opened the door and stuck her head out and asked him what he wanted; that he told her he wanted to buy some whisky; that he could not tell just who the woman was, but that she sent him a quart of whisky, and he gave her a dollar. Tucker's evidence was to some extent corroborated by A. J. Spradley, who testified that soon after the alleged occurrence Tucker made to him the same statement in substance that he had made on the witness stand. It was also shown by Mr. Spradley that the reputation of appellant in the community where she resided for truth and veracity was bad. The same fact was also shown by two other witnesses, Johnson and Clevenger. It will be seen from the above statement that the testimony was in great conflict.

1. During the trial, while appellant was on the witness stand, she was asked by counsel for the State the following question: "How many times have you been indicted for selling intoxicating liquors during the year 1909?" to which question counsel for appellant objected, because same was immaterial and irrelevant to any issue in this case, and did not tend to prove the guilt or innocence of the defendant in this case, and because said offenses are not such as involves moral turpitude, and the testimony was calculated to prejudice the jury against her. These objections were by the court overruled, and defendant was required to answer the question and did answer that she had been indicted nine times during the year of 1909 for the unlawful sale of intoxicating liquors. This bill of exceptions is allowed by the trial court with the statement that he did not deem this answer harmful in view of her statement that she was acquitted in one case and the others were dismissed.

2. Closely allied to this matter was the action of the court in permitting appellant to be asked while on the stand in her own behalf the following question: "Is it not a fact that you have been indicted nine times before this for violating the local option law, and if you and your brother, Bud Lewis, did not swear you out of it?" Practically the same objection was made to this question and the answer sought to be elicited thereby. These objections were by the court overruled and the witness compelled to answer and did answer that this was the first time she had testified in court; that she did not go on the stand as a witness in her own behalf in any of the above cases, but that her brother, Bud Lewis, did testify in the cases that had been tried, to which action of the court in overruling the objections to said question and requiring her to answer, appellant excepted.

3. In connection with this matter the court, in his general charge, gave to the jury the following instruction: "You can not consider other offenses inquired about of the defendant while on the stand as a witness in her own behalf for any other purpose than enabling

you to properly pass upon the credibility of the defendant. Nor can you consider the testimony of other witnesses as to other alleged violations of the local option law by defendant for any purpose except as they may enable you to pass upon the intent of the defendant as to the case in which she is accused and is being tried." The question objected to and the evidence given by the witness should not have been permitted, nor should the court have given the charge above complained of. On a full review of all the authorities in the case of Merriwether v. State, 55 Texas Crim. Rep., 438, we said: "We understand the rule to be that charges preferred in a legal manner, and certainly convictions of crime which imply moral turpitude, are receivable in evidence as affecting the credibility of a witness or a defendant, but this rule has not been applied, we think, and should not be applied in respect to convictions which do not involve moral obliquity or of the grade of felony, or such as are not of the class that the law recognizes as involving moral turpitude." We think that the action of the court in permitting these questions to be asked, taken in connection with the charge given, was both erroneous and hurtful.

Some of the other questions raised are not likely to occur on another trial, and except for the matter referred to we would not reverse the case, but we think, in view of the nature of the case, the close question of fact, and the substantial contradiction of the evidence, that a conviction under the circumstances ought not in justice to stand.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*